UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELFIDO RAMIREZ,<br><br>      Plaintiff,<br><br> v.<br><br>TIFARET DISCOUNT, INC. d/b/a REDELICIOUS SUPERMARKET, BARUCH AUSCH and ZELIG WEISS,<br><br>      Defendants. | Case No.<br><br>**COMPLAINT**<br><br>JURY TRIAL REQUESTED |

Plaintiff Elfido Ramirez ("Plaintiff" or "Ramirez"), by his attorneys the Worker Justice Center of New York, complaining of Defendants Tifaret Discount, Inc. d/b/a Redelicious Supermarket ("Redelicious Supermarket"), Baruch Ausch ("Ausch") and Zelig Weiss ("Weiss") (collectively, "Defendants"), alleges:

**I. PRELIMINARY STATEMENT**

1. Plaintiff Elfido Ramirez was employed by Defendants for over a year as a stocker and delivery person at Redelicious Supermarket located in Rockland County, NY. Though Mr. Ramirez regularly worked long hours performing back-breaking work, Defendants treated him and other Hispanic employees as second-class citizens.

2. Defendants subjected Mr. Ramirez to derogatory and offensive treatment and created a work environment strikingly hostile to Hispanic staff, like Plaintiff. Defendants referred to Plaintiff and other Hispanic employees as "stupid" and "idiots," harassed them for using the restroom, only permitted them to take their lunch breaks in a busy hallway rather than the lunch room, denied them benefits provided to non-Hispanic employees, and told Plaintiff that higher-paying positions were "not for him."

1

3. Defendants failed to pay Mr. Ramirez for all his hours, failed to pay him overtime, failed to pay spread-of-hours compensation, and failed to provide an accurate hiring notice or pay stubs.

4. The hostile work environment boiled over into physical violence in late April of 2021, when Mr. Ramirez was assaulted by his supervisor Defendant Zelig Weiss, because he was displeased with the manner in which Mr. Ramirez had restocked a shelf. Mr. Weiss struck Mr. Ramirez in the mouth with a metal rimmed can. The blow knocked out Mr. Ramirez's dental prosthetic and caused profuse bleeding. The assault caused Mr. Ramirez to fear for his safety.

5. Store owner Baruch Ausch was immediately made aware of the assault and was present at the supermarket when police arrived. Rather than discipline Mr. Weiss, however, Mr. Ausch fired Mr. Ramirez one week later, in retaliation for having reported the crime to the police and refusing to withdraw the charges, as Mr. Ausch had demanded.

## II. JURISDICTION AND VENUE

6. Plaintiff alleges violations of the minimum wage and overtime provisions of the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the minimum wage, overtime, spread of hours, hiring and wage notice provisions of New York Labor Law Article 19 § 650 *et seq.* ("NYLL"). Plaintiff also alleges violations of anti-discrimination provisions of 42 U.S.C. § 1981 and the New York State Human Rights Law ("HRL") prohibiting discrimination based on race and national origin and, as well as the retaliation provision of NYLL § 740.

7. This Court has subject matter jurisdiction pursuant to Section 1981, 42 U.S.C. § 1981; the FLSA, 29 U.S.C. § 201 *et seq*; and 28 U.S.C. §§ 1331 and 1337.

8. With respect to the state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 in that the state law claims derive from a common nucleus of

operative fact and are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is appropriate in the Southern District of New York pursuant to 28 U.S.C. § 1391(b), as Defendants are residents of the Southern District of New York and the events giving rise to this claim occurred within this judicial district.

### III. THE PARTIES

10. Plaintiff Elfido Ramirez is a Hispanic adult individual and a resident of Rockland County, NY.

11. Plaintiff was born outside of the United States.

12. Plaintiff's primary language is Spanish.

13. Plaintiff was employed by Defendants from approximately February 2020 until on or about April 29, 2021.

14. At all times relevant to this Complaint, Plaintiff was an employee of Defendants as that term is defined by 42 U.S.C. § 1981; the FLSA, 29 U.S.C. § 203(e)(1); the HRL, N.Y. Exec. Law § 292; and the NYLL §§ 190 and 740.

15. At all times relevant to this Complaint, Plaintiff was an employee engaged in commerce or the production of goods for commerce. He routinely unloaded shipments of products for Defendants' retail store that had arrived from New Jersey, and he routinely made deliveries to Defendants' customers in New Jersey.

16. At all times relevant to this Complaint, Plaintiff was an employee in an enterprise engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. § 203 *et seq*.

17. Defendant Tifaret Discount, Inc. d/b/a Redelicious Supermarket is a domestic

corporation doing business in the State of New York at 100 NY-59 #24, Monsey, NY 10952.

18. Redelicious Supermarket is an enterprise engaged in the business of operating a kosher supermarket, meat market, deli and bakery.

19. Redelicious Supermarket is owned and controlled by Defendant Baruch Ausch, who is the owner and President of Redelicious Supermarket.

20. At all times relevant to the Complaint, Ausch had the power, and did in fact exercise such power, to hire and fire Defendants' employees, set employees' wages and work schedules, retain time and/or wage records, and otherwise control the terms and conditions of employment of all Defendants' employees, including Plaintiff.

21. At all times relevant to the Complaint, Ausch had the power, and did in fact exercise such power, to create pay practices and policies for the corporate defendant.

22. At all times relevant to the Complaint, Ausch had the power to stop any of Defendants' illegal pay practices.

23. At all times relevant to the Complaint, Ausch directly supervised Plaintiff.

24. At all times relevant to the Complaint, Defendant Zelig Weiss was a manager and supervisor of Redelicious Supermarket.

25. At all times relevant to the Complaint, Weiss directly supervised Plaintiff.

26. At all times relevant to the Complaint, Weiss had the power to direct and assign tasks, supervise employee work, and otherwise control the terms and conditions of employment of Plaintiff.

27. At all times relevant to the Complaint, Redelicious Supermarket was an employer of Plaintiff as that term is defined by 42 U.S.C. § 1981; the FLSA, 29 U.S.C. § 203(e)(1); the HRL, N.Y. Exec. Law § 292; and the NYLL §§ 190 and 740.

28. At all times relevant to the Complaint, Ausch was Plaintiff's employer as that term is defined by 42 U.S.C. § 1981; the FLSA, 29 U.S.C. § 203(e)(1); the HRL, N.Y. Exec. Law § 292; and the NYLL §§ 190 and 740.

29. At all times relevant to the Complaint, Weiss was Plaintiff's employer as that term is defined by 42 U.S.C. § 1981; the FLSA, 29 U.S.C. § 203(e)(1); the HRL, N.Y. Exec. Law § 292; and the NYLL §§ 190 and 740.

30. At all times relevant to the Complaint, Redelicious Supermarket employed more than 20 employees and engaged in an industry affecting commerce within the meaning of 29 U.S.C. § 203 *et seq*.

31. Upon information and belief, Redelicious Supermarket grossed more than $500,000 per year in revenue for each of the past five (5) calendar years.

32. Upon information and belief, Redelicious Supermarket is an enterprise engaged in commerce.

## IV. STATEMENT OF FACTS

33. On or about February 2020, Defendant Ausch hired Plaintiff to work as a stocker on the main floor at the supermarket.

34. Plaintiff's duties as a stocker were restocking shelves, receiving and unloading pallets of large shipments, moving boxes of groceries and products into trailers and other areas for storage, disassembling and discarding boxes, cleaning his work area, and other tasks as needed.

35. In approximately January 2021, Defendant Ausch asked Plaintiff to also work as a delivery person in the mornings for 3 to 4 hours before his shift as a stocker.

36. In his delivery role, Plaintiff was tasked with loading and unloading boxes and bags of groceries into a minivan with the Redelicious logo and driving to private homes to drop the

deliveries off in Rockland County and Northern New Jersey. He performed this work alone and averaged about 10 to 15 homes per shift.

37. From approximately February 2020 through September 2020, Defendants paid Plaintiff $11.80 per hour for his work as a stocker.

38. From approximately September 2020 to April 2021, Defendants paid Plaintiff $12.50 per hour for his work as a stocker.

39. From January 2021 to April 2021, Defendants paid Plaintiff $18 per hour for his work as a delivery person.

40. Defendants paid Plaintiff for his grocery store hours partly in cash and partly in check.

41. Defendants paid Plaintiff for his delivery hours in cash.

42. From approximately February 2020 through December 2020, Plaintiff regularly worked Sunday through Thursday from 8 a.m. to 7 p.m. or 9 p.m. and Fridays from 7 a.m. to 2:30 p.m. or 3 p.m., totaling between 62.5 to 73 hours per week.

43. From approximately January 2021 to April 29, 2021, Plaintiff regularly worked Sunday through Thursday from approximately 5 a.m. to 7 p.m. or 9 p.m. and Fridays from 5 a.m. to 2:30 p.m. or 3 p.m., totaling approximately 77.5 to 88 hours per week.

44. Defendants did not permit Plaintiff to record his delivery hours with the time clock. Rather, they directed Plaintiff only to clock in when he began his stocking duties.

45. Defendants required Plaintiff to clock out for at least 30 minutes for a lunch break Monday to Thursday, but he rarely received an uninterrupted lunch break of at least 20 minutes.

46. If Plaintiff did not clock out for a lunch break, the time clock automatically deducted an hour, and Defendants did not pay him at all for this work time.

47. On Fridays, Defendants prohibited Plaintiff from taking a lunch break. However, the time clock automatically deducted one hour from his work time. Plaintiff regularly complained to Defendants about this discrepancy, but it was never resolved and Defendants never paid Plaintiff for this work time.

48. Defendants typically paid Plaintiff on Fridays. However, when there were holidays, Defendants would delay payment of Plaintiff's wages until at least the following week.

49. Defendants failed to pay Plaintiff at all for two grocery store shifts and four delivery shifts, totaling approximately $491 in unpaid wages,[1] during his last week of work.

50. Throughout Plaintiff's employment, Defendants did not pay Plaintiff an additional hour of pay at the applicable minimum wage rate on days when he worked a span of more than 10 hours.

51. Defendants failed to provide Plaintiff with a written wage notice, in English or Spanish, at the time of his hiring or within 10 business days of his first day of employment, setting out his rates of pay and other information as required by the NYLL.

52. Defendants failed to provide Plaintiff with an accurate written wage statement with his weekly payment of wages, setting forth his total pay, his hours during the pay period, and his regular and overtime rates of pay as required by the NYLL.

53. Defendants failed to pay Plaintiff at a rate of one- and one-half times his regular hourly rate of pay, or one- and one-half times the applicable minimum wage, for every hour worked over 40 in a workweek.

54. Defendants were aware or should have been aware that applicable law required

---

[1] Approximately 12 hours paid at $18 and 22 hours paid at a rate of $12.50.

them to pay employees such as Plaintiff for all hours worked, to pay employees such as Plaintiff premium pay for all hours worked in excess of 40 per week, and to pay employees such as Plaintiff an additional hour for each day in which he worked split shifts and/or a spread of hours exceeding 10 hours in a day.

55. Defendants knowingly paid Plaintiff for fewer hours than he worked.

56. Plaintiff's workplace was permeated with discriminatory intimidation, ridicule, and insult directed by Defendants to him and other employees of Hispanic heritage. The discrimination was so pervasive as to adversely alter the conditions of Plaintiff's employment.

57. Defendants Ausch and Weiss, and other managers constantly monitored and exceedingly pressured Hispanic employees, like Plaintiff, to work faster.

58. Defendants Ausch and Weiss, and other managers were vigilant of when Hispanic employees, like Plaintiff, used the bathroom and they would aggressively knock and shake the bathroom doors and tell them to hurry up and get back to work.

59. Defendants Ausch and Weiss, and other managers, often called Plaintiff and other Hispanic employees "idiot" or "stupid."

60. Defendant Weiss regularly asked Plaintiff to help train new Spanish-speaking, Hispanic stockers and commented to Plaintiff that "Hispanics are stupid because they can't speak English."

61. Defendants Ausch and Weiss and other managers did not treat White, non-Hispanic employees in this manner. White, non-Hispanic employees were treated markedly better by Defendants. Defendants treated White, non-Hispanic employees with respect, regardless of the work position they held, and regularly laughed and hugged one another.

62. Defendants typically did not permit Hispanic employees to take uninterrupted meal

breaks. Instead, Defendants required Hispanic employees to eat their "meals" hurriedly in a matter of minutes before returning to work. In comparison, Defendants allowed White, non-Hispanic employees to take uninterrupted meal breaks.

63. Defendants gave materially preferential treatment to their White, non-Hispanic employees, as compared to their Hispanic employees, such as Plaintiff.

64. Defendants only employed non-Hispanic employees in the higher paying, less physically demanding roles such as managers, cashiers, or shoppers for online pick-up orders.

65. Defendants largely employed Hispanic employees like Plaintiff in the lower paying, physically demanding roles such as receiving shipments and unloading pallets, stocking shelves, and making deliveries.

66. Around summer 2020, Plaintiff asked a general floor manager named Shrage Rosenberg for the opportunity to work in a higher-paying role such as cashier or store shopper. Rosenberg scoffed at Plaintiff's request and told him that his request was "impossible", implying that he would not be considered for these higher-paying roles, which were only held by white non-Hispanic employees, because he is Hispanic.

67. On another occasion, Plaintiff asked general floor manager Rosenberg why Redelicious Supermarket did not employ any Hispanic managers and Rosenberg responded that "that would never happen."

68. Defendants provided free deli meals to White, non-Hispanic employees while Hispanic employees, like Plaintiff, had to pay for deli meals.

69. Defendants enforced a different set of rules and disciplinary consequences for Hispanic employees, like Plaintiff, than they enforced for White, non-Hispanic employees. For example, Defendants permitted White, non-Hispanic employees to work on a flexible schedule,

but did not permit Hispanic employees the same benefit.

70. Upon information and belief, Defendants paid White, non-Hispanic employees benefits that they did not pay to Hispanic employees, like Plaintiff, such as a yearly bonus and paid sick time.

71. Defendants provided White, non-Hispanic employees a designated break room area with sufficient seating, microwave, and sink. Defendants provided Hispanic employees only two chairs, located in a heavy traffic hallway. Defendants often required Hispanic employees to get up and out of the way, or to stop eating and help, when large boxes and pallets had to pass through. Furthermore, Defendants did not provide Hispanic employees a microwave to heat their food, such that the Hispanic employees had to pool their money together to purchase one.

72. On April 29, 2021, Defendant Weiss approached Plaintiff while he was stocking shelves, shouting about the placement of food cans. Plaintiff could not understand all the details of what Defendant Weiss was saying, and Weiss became irate. Plaintiff told Defendant Weiss to stop yelling at him and left the area to speak to another manager about the incident.

73. Defendant Weiss chased Plaintiff down and assaulted him, forcefully striking Plaintiff in the face with a metal rimmed can. The assault caused substantial dental and facial damage.

74. The assault caused Plaintiff to fear for his safety and believe that Weiss posed a threat to the health and safety of other Hispanic employees and shoppers.

75. Plaintiff subsequently called the police, gave a statement, and soon after pressed charges against Defendant Weiss. Defendant Ausch was present when the police arrived to take Plaintiff's statement.

76. Defendant Ausch promised Plaintiff that he would pay for Plaintiff's medical

expenses and time off needed to recover. Plaintiff was out of work for about a week attending medical appointments and recovering. Defendant Ausch did not pay for Plaintiff's medical expenses nor for the sick time Plaintiff took off.

77. Fearful for his safety in and out of work, Plaintiff also obtained a restraining order against Defendant Weiss.

78. On several occasions after the assault, Defendant Ausch asked Plaintiff to drop the charges against Defendant Weiss, but Plaintiff refused.

79. Approximately one week later, Defendant Ausch fired Plaintiff, telling Plaintiff not to return to work if he refused to drop the charges.

80. Upon information and belief, Zelig Weiss targeted Plaintiff for abuse at least in part because of his perceived race, ethnicity, color, and/or national origin

81. Upon information and belief, Defendants did nothing to intervene or reprimand Zelig Weiss.

82. Upon information and belief, Defendants Ausch did not conduct an internal investigation into the matter or reprimand Defendant Weiss.

83. Zelig Weiss remained employed at Redelicious Supermarket following Plaintiff's termination.

84. Defendants never provided Plaintiff with or informed him of any policy that Redelicious Supermarket had about harassment, discrimination, or retaliation in the workplace.

85. Upon information and belief, Redelicious Supermarket had no policies in place related to harassment discrimination, or retaliation at any time during Plaintiff's employment.

86. Upon information and belief, Defendants did not post information at the workplace related to laws prohibiting discrimination.

87. Upon information and belief, Defendants did not provide training to any employees on harassment or discrimination in the workplace.

## VIII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Section 1981 – Discrimination)

88. Plaintiff restates, re-alleges, and incorporates by reference all of the previous allegations as if fully set forth herein.

89. By the actions set forth above, among others, Defendants have discriminated against Plaintiff in violation of Section 1981.

90. Defendants discriminated against Plaintiff because of his Hispanic race and ethnicity and subjected them to a hostile work environment because of his Hispanic race and ethnicity.

91. As a result of Defendants' illegal actions, Plaintiff has suffered, and continue to suffer, economic harm, mental anguish, and emotional distress for which he is entitled to damages.

92. Defendants' actions were malicious, willful, and wanton violations of Section 1981 for which Plaintiff is entitled to an award of punitive damages.

### SECOND CAUSE OF ACTION
(Fair Labor Standards Act – Minimum Wage Violations)

93. Plaintiff restates, re-alleges, and incorporates by reference all of the preceding allegations as if fully set forth herein.

94. Defendants willfully failed to pay Plaintiff at least the applicable federal minimum wage for each hour worked, in violation of 29 U.S.C. § 206 et seq.

95. Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants, jointly and severally, their unpaid overtime compensation, an additional equal amount

as liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to 29 U.S.C. § 216 (b).

## THIRD CAUSE OF ACTION
### (Fair Labor Standards Act – Overtime Wage Violations)

96. Plaintiff restates, re-alleges, and incorporates by reference all of the preceding allegations as if fully set forth herein.

97. Defendants willfully failed to pay Plaintiff overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of 40 hours in a workweek, in violation of 29 U.S.C. § 207 (a)(1).

98. Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid overtime compensation, an additional equal amount as liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to 29 U.S.C. § 216 (b).

## FOURTH CAUSE OF ACTION
### (Fair Labor Standards Act – Late Payment of Wages)

99. Plaintiff restates, re-alleges, and incorporates by reference all of the preceding allegations as if fully set forth herein.

100. Defendants willfully failed to pay Plaintiff timely, within the meaning of 29 U.S.C. § 206(a).

101. Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants, jointly and severally, compensatory damages caused by the late payment of wages, including liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to 29 U.S.C. § 216 (b).

## FIFTH CAUSE OF ACTION
### (New York State Human Rights Law – Discrimination)

102. Plaintiff restates, re-alleges, and incorporates by reference all of the previous allegations as if fully set forth herein.

103. By the actions set forth above, among others, Defendants have discriminated against Plaintiff in violation of the New York State Human Rights Law.

104. Defendants discriminated against Plaintiff in the terms, conditions, or privileges of employment because of his race and national origin.

105. Defendants discriminated against Plaintiff by fostering and condoning a work environment at Redelicious Supermarket that was intimidating, hostile, and offensive to Plaintiff on the basis of his race and national origin.

106. Defendants discriminated against Plaintiff by harassing and demeaning him because of his race and national origin.

107. Moreover, in creating a toxic work environment in which Hispanic employees were seen as inferior to White, non-Hispanic employees, Defendants Ausch and Redelicious Supermarket aided and abetted Defendant Weiss's violent, racially motivated assault against Plaintiff.

108. Defendants' actions were in direct violation of the New York State Human Rights Law, Executive Law § 290 *et seq*.

109. As a result of Defendants' willful and illegal actions, Plaintiff has suffered, and continue to suffer economic harm, mental anguish, and emotional distress for which he is entitled to damages.

## SIXTH CAUSE OF ACTION
### (New York Labor Law – Minimum Wage)

110. Plaintiff restates, re-alleges, and incorporates by reference all of the previous allegations as if fully set forth herein.

111. Defendants willfully violated Plaintiff's rights by failing to pay him the applicable New York State minimum wage for each hour worked.

112. Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants, jointly and severally, their unpaid overtime compensation, liquidated damages, reasonable attorneys' fees, costs of the action, and interest, pursuant to NYLL §§ 198 and 663.

## SEVENTH CAUSE OF ACTION
### (New York Labor Law – Overtime Wage)

113. Plaintiff restates, re-alleges, and incorporates by reference all of the previous allegations as if fully set forth herein.

114. Defendants willfully violated Plaintiff's rights by failing to pay him overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of 40 hours in a workweek.

115. Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid overtime compensation, liquidated damages, reasonable attorneys' fees, costs of the action, and interest, pursuant to NYLL §§ 198 and 663.

## EIGHTH CAUSE OF ACTION
### (New York Labor Law – Late Payment of Wages)

116. Plaintiff restates, re-alleges, and incorporates by reference all of the preceding allegations as if fully set forth herein.

117. Plaintiff was a manual worker within the meaning of the New York Labor Law.

118. Defendants failed to pay Plaintiff wages on a weekly basis as required by NYLL §

191(1)(a)(i), when Defendants would delay payment of Plaintiff's wages until at least the following week during holidays.

119. Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants, jointly and severally, compensatory damages caused by the late payment of wages, including liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to NYLL § 198.

<strong><u>NINTH CAUSE OF ACTION</u></strong><br>
<strong>(New York Labor Law – Spread of Hours)</strong>

120. Plaintiff restates, re-alleges, and incorporates by reference all of the previous allegations as if fully set forth herein.

121. Defendants willfully violated Plaintiff's rights by failing to pay him an additional hour of pay at the minimum wage rate for days on which his workday spanned more than 10 hours or on days he worked multiple shifts.

122. Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid spread of hours compensation, liquidated damages, reasonable attorneys' fees, costs of the action, and interest, pursuant to NYLL §§ 198 and 663.

<strong><u>TENTH CAUSE OF ACTION</u></strong><br>
<strong>(New York Labor Law – Failure to Provide Hiring Notices and Wage Statements)</strong>

123. Plaintiff restates, re-alleges, and incorporates by reference all of the previous allegations as if fully set forth herein.

124. Defendants failed to supply Plaintiff a hiring notice as required by NYLL § 195(1)(a).

125. Defendants failed to supply Plaintiff with an accurate wage statement with each

payment of wages, as required by NYLL § 195(3).

126. Due to Defendants' NYLL violations, Plaintiff is entitled to statutory damages as provided for by NYLL § 198, as well as reasonable attorneys' fees and costs.

### ELEVENTH CAUSE OF ACTION
### (New York Labor Law – Whistleblower Retaliation)

127. Plaintiff restates, re-alleges and incorporates by reference all of the previous allegations as if fully set forth herein.

128. By reporting Defendant Weiss's assault to the police, Plaintiff disclosed to a public body an activity, policy or practice of the employer that he reasonably believed was in violation of law, rule or regulation that creates and presents a substantial and specific danger to the public health or safety within the meaning of NYLL § 740(2)(a).

129. Defendants retaliated against Plaintiff, in violation of NYLL § 740(2)(a), by terminating Plaintiff for making this disclosure and refusing to withdraw the criminal charges.

130. As a direct and proximate result of Defendants' willful and unlawful conduct in violation of the NYLL, Plaintiff has suffered, and continues to suffer, harm for which he is entitled to recover from Defendants, jointly and severally, all appropriate damages, including front pay, lost wages and benefits, punitive damages, reasonable attorneys' fees, and costs of the action.

### IX.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

131. Declare Defendants' conduct complained of herein to be in violation of Plaintiff's rights under the FLSA, NYLL, Section 1981, and the New York State Human Rights Law;

132. Grant judgment to Plaintiff on his FLSA claims and order Defendants to pay to Plaintiff all wages owed and all damages to which Plaintiff is entitled under the FLSA;

133. Grant judgment to Plaintiff on his NYLL claims and order Defendants to pay to Plaintiff all wages owed and all damages to which Plaintiff is entitled under the NYLL;

134. Grant judgment to Plaintiff on his Section 1981 claims and award Plaintiff all appropriate relief to which he is entitled;

135. Grant judgment to Plaintiff on his New York Human Rights Law claims and award Plaintiff all appropriate damages, fines, and penalties as provided for by statute;

136. Award Plaintiff all other damages to which he is entitled;

137. Award Plaintiff reasonable attorneys' fees, costs, and interest; and

138. Award Plaintiff such other legal and equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

*/s/ Maureen Hussain*

Maureen Hussain, Esq.
Cristina Brito, Esq.
Worker Justice Center of New York
245 Saw Mill River Road, Suite 106
Hawthorne, NY 10532
(845) 331-6615
mhussain@wjcny.org
cbrito@wjcny.org

**ATTORNEYS FOR THE PLAINTIFF**

Dated: December 12, 2022