UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ELFIDO RAMIREZ,

       Plaintiff,

  v.

TIFARET DISCOUNT, INC. d/b/a
REDELICIOUS SUPERMARKET, BARUCH
AUSCH, *and* ZELIG WEISS,

       Defendants.

No. 22-CV-10489 (KMK)

OPINION & ORDER

---

Appearances:

Cristina Brito, Esq.
Maureen Hussain, Esq.
Worker Justice Center of New York
Hawthorne & Kingston, NY
*Counsel for Plaintiff*

Joseph J. Haspel, Esq.
Joseph J. Haspel PLLC
Middletown, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

  Plaintiff Elfido Ramirez ("Plaintiff") brings this Action against Tifaret Discount, Inc.

d/b/a Redelicious Supermarket ("Redelicious"), Baruch Ausch ("Ausch"), and Zelig Weiss

("Weiss"; collectively, "Defendants"), alleging that Defendants (1) unlawfully discriminated

against him on the basis of race and ethnicity and fostered a hostile work environment, in

violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*;

42 U.S.C. § 1981; and the New York Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296;

(2) violated numerous provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201,

*et seq.*, and the New York Labor Law ("NYLL") by, inter alia, failing to pay Plaintiff proper and timely wages and failing to provide Plaintiff with wage notices; and (3) retaliated against Plaintiff as a whistleblower in violation of the NYLL.  (*See* Compl. (Dkt. No. 1).)  Before the Court is Defendants' partial Motion To Dismiss Counts Two, Four, Six, Eight, and Eleven of the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").  (*See* Not. of Mot. (Dkt. No. 15); Mem. of Law in Supp. of Mot. ("Defs' Mem.") 1–2 (Dkt. No. 16) (outlining the counts with which Defendants request dismissal).)[1]  For the foregoing reasons, Defendants' Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from the Complaint and are assumed to be true for the purposes of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Plaintiff is "a Hispanic adult individual and a resident of Rockland County, NY," who was born outside of the United States and who primarily speaks Spanish.  (Compl. ¶¶ 10–12.) Redelicious is a domestic corporation that operates as a kosher supermarket, meat market, deli, and bakery in Monsey, New York.  (*Id*. ¶¶ 17–18.)  Ausch is the owner and President of Redelicious, (*id.* ¶ 19), while Weiss is a manager and supervisor at Redelicious, (*id.* ¶ 24).

Plaintiff was employed by Defendants from approximately February 2020 until April 29, 2021.  (*Id*. ¶ 13.)  On or about February 2020, Ausch hired Plaintiff to work as a stocker at Redelicious, where Plaintiff's duties involved "restocking shelves, receiving and unloading

---

[1] During the course of briefing on the instant Motion, Defendants withdrew their challenge to Count Nine, the spread of hours claim.  (*See* Reply Mem. in Supp. of Mot. ("Defs' Reply") 4 (Dkt. No. 18).)

pallets of large shipments, moving boxes of groceries and products into trailers and other areas for storage, disassembling and discarding boxes, cleaning his work area, and other tasks as needed." (*Id.* ¶¶ 33–34.) In approximately January 2021, Ausch asked Plaintiff to also work as a "delivery person" each morning for 3 to 4 hours before his shift as a stocker, which required Plaintiff to load and unload boxes of groceries into a minivan, and to drive to private homes to drop the groceries off in Rockland County and Northern New Jersey. (*Id.* ¶¶ 35–36.) Plaintiff alleges that he did this work alone and averaged about ten to fifteen homes per shift. (*Id.* ¶ 36.)

### 1.  Plaintiff's Wages

Plaintiff alleges that although he "regularly worked long hours performing back-breaking work, Defendants treated him and other Hispanic employees as second-class citizens" by, among other things, failing to pay Plaintiff for all of his hours, for overtime, and for spread-of-hours compensation, and failing to provide an accurate hiring notice or pay stubs. (*Id.* ¶¶ 1, 3; *see also id.* ¶¶ 51–54 (alleging wage notice, wage statement, and overtime violations).) Specifically, between February 2020, and September 2020, Defendants paid Plaintiff $11.80 per hour for his work as a stocker. (*Id.* ¶ 37.) Between September 2020 and April 2021, Defendants paid Plaintiff $12.50 per hour as a stocker. (*Id.* ¶ 38.) Between January 2021, and April 2021, for his work as a delivery person, Plaintiff was paid $18.00 per hour. (*Id.* ¶ 39.) During Plaintiff's time working *only* as a stock worker, Plaintiff was paid partly in cash and partly in check, and regularly worked between 62.5 and 73 hours per week. (*Id.* ¶¶ 40, 42.) When Plaintiff began his delivery work, Plaintiff regularly worked between 77.5 and 88 hours per week and was only paid in cash for his deliveries. (*Id.* ¶¶ 41, 43.)

Plaintiff alleges various inconsistencies in his recorded time, noting that Defendants did not allow Plaintiff to record his delivery hours with a time clock and instead directed him to only clock in when he began his stocking duties. (*Id.* ¶ 44.) Plaintiff also alleges that Defendants

required Plaintiff to clock out for at least 30 minutes for a lunch break Monday through Thursday even though Plaintiff did not receive a full lunch break, and if Plaintiff did not clock out for lunch, the time clock automatically deducted an hour from his eventual pay.  (*Id*. ¶¶ 45–46.) Plaintiff alleges that Defendants prohibited Plaintiff from taking a lunch break at all on Fridays, and an hour would be deducted from his work time.  (*Id*. ¶ 47.)  Plaintiff also alleges that Defendants have failed to pay him for two grocery shifts and four delivery shifts during his last week of work.  (*Id*. ¶ 49.)

Plaintiff alleges Defendants were aware of the discrepancies in his wages but failed to make any changes.  (*See id*. ¶¶ 47, 54–55.)  Specifically, Plaintiff alleges that Defendants did not pay Plaintiff any additional hour of pay at the applicable minimum wage rates on days that Plaintiff worked a span of more than 10 hours, (*id*. ¶ 50), that and Defendants did not pay Plaintiff an overtime rate for any work he did over 40 hours a week, (*id*. ¶ 53).  Plaintiff also alleges that Defendants "typically paid Plaintiff on Fridays[,]" but when there were holidays, Defendants would "delay payment of Plaintiff's wages until at least the following week."  (*Id*. ¶ 48.)

## 2.  Defendants' Discriminatory Behavior

At the same time as Plaintiff's alleged wage violations, Plaintiff alleges that his "workplace was permeated with discriminatory intimidation, ridicule, and insult[s] directed by Defendants to him and other employees of Hispanic heritage."  (*Id*. ¶ 56.)  Plaintiff alleges that Ausch and Weiss, as well as other managers at Redelicious, "constantly monitored and exceedingly pressured Hispanic employees . . . to work faster," aggressively knocking on and shaking bathroom doors to hurry Plaintiff and others to get back to work.  (*Id*. ¶¶ 57–58.)  Ausch and Weiss also "often called Plaintiff and other Hispanic employees 'idiot' or 'stupid[,]'" while

Weiss, in asking Plaintiff to help train new Spanish-speaking Hispanic stockers, told Plaintiff that "Hispanics are stupid because they can't speak English." (*Id*. ¶¶ 59–60.)

Plaintiff alleges that Ausch and Weiss treated Hispanic employees differently from White, non-Hispanic employees ("White employees") in several respects. (*See id*. ¶¶ 61–71.) For example, Plaintiff alleges that Hispanic employees were not allowed to take uninterrupted meal breaks, while White employees took uninterrupted meal breaks. (*Id*. ¶ 62.) Defendants also employed only non-Hispanic employees in the "higher paying, less physically demanding roles such as managers, cashiers, or shoppers for online pick-up orders." (*Id*. ¶¶ 64–65.) When Plaintiff asked about opportunities to work in a higher-paying roles, a floor manger told him that his request was "impossible" and "would never happen." (*Id*. ¶¶ 66–67.) Plaintiff alleges that Defendants also "enforced a different set of rules and disciplinary consequences for Hispanic employees" than for White employees, such as creating flexible schedules for White employees but not Hispanic employees, and providing White employees with yearly bonuses and paid sick time while not extending such benefits to Hispanic employees. (*Id*. ¶¶ 69–70.) Defendants also offered free deli meals to White employees, while Hispanic employees had to pay for the same meals. (*Id*. ¶ 68.) Finally, Plaintiff alleges that White employees had access to a designated break room area with seating, a microwave, and a sink, while Hispanic employees were only provided two chairs in a heavily trafficked hallway. (*Id*. ¶ 71.) Because Hispanic employees did not have access to the microwave, Plaintiff and other Hispanic employees pooled their money together to purchase a microwave for their use. (*Id*.)

### 3.  April 2021 Incident

Finally, Plaintiff recounts an incident that took place on April 29, 2021, where Plaintiff alleges that Weiss assaulted him while at work. (*See id*. ¶¶ 72–83.) On the day in question, Weiss approached Plaintiff while he was stocking shelves, shouting at Plaintiff over the

placement of food cans.  (*Id*. ¶ 72.)  Plaintiff did not understand exactly what Weiss was saying and Weiss became "irate[,]" after which Plaintiff told Weiss to stop yelling and left the area to speak to another manager about the situation.  (*Id*.)  Plaintiff alleges that Weiss chased Plaintiff and assaulted him by forcefully striking him in the face with a metal-rimmed can.  (*Id*. ¶ 73.)  As a result, Plaintiff sustained substantial dental and facial damage.  (*Id*.)

After this incident, Plaintiff became very worried about his safety and the safety of other Hispanic employees.  (*Id*. ¶ 74.)  Plaintiff reported the incident to the police, gave them a statement, and pressed charges against Weiss.  (*Id*. ¶ 75.)  Plaintiff also obtained a restraining order against Weiss.  (*Id*. ¶ 77.)  Ausch was present when the police arrived to take Plaintiff's statement, and promised Plaintiff that he would pay for Plaintiff's medical expenses and time off for recovery.  (*Id*. ¶¶ 75–76.)  Plaintiff was out of work for a week as a result of his injuries, but Ausch did not pay Plaintiff's medical bills or provide him paid time off.  (*Id*. ¶ 76.)  Ausch repeatedly asked Plaintiff to drop the charges against Weiss, but Plaintiff refused to do so.  (*Id*. ¶ 78.)  Approximately one week after returning to work, Ausch fired Plaintiff and told him not to return to work if he did not drop the charges.  (*Id*. ¶ 79.)  Upon information and belief, Plaintiff alleges that Ausch did not conduct an internal investigation into the matter or reprimand Weiss, and Weiss remained employed at Redelicious after Plaintiff's termination.  (*Id*. ¶¶ 82–83.)

B.  Procedural History

Plaintiff filed his initial Complaint on December 12, 2022.  (*See* Compl.)  On December 28, 2022, Defendants filed a pre-motion letter in anticipation of filing a motion to dismiss the complaint.  (Dkt. No. 6.)  After receiving Plaintiff's response, (*see* Dkt. No. 7), the Court held a pre-motion conference on January 17, 2023, and adopted a briefing schedule, (*see* Dkt. (minute entry for January 17, 2023); Order (Dkt. No. 11)).  On February 14, 2023, Defendants filed the instant Motion.  (*See* Not. of Mot.; Defs' Mem.)  Plaintiff filed his Opposition on March 31,

2023.  (*See* Mem. of Law in Opp. to Mot. ("Pl's Mem.") (Dkt. No. 17).)  On April 19, 2023,

Defendants filed their Reply.  (*See* Defs' Reply.)

<u>II.  Discussion</u>

A.  <u>Standard of Review</u>

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of

Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it

tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and quotation

marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to

relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although, "once a claim has

been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a

claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[]

across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also*

*Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense.  But where the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation

omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous

departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw all reasonable inferences in the plaintiff's favor," *Division 1181*, 9 F.4th at 95 (citation omitted). Additionally, "when ruling on a Rule 12(b)(6) motion to dismiss," district courts are directed to confine their consideration to "the complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (quotation marks omitted); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).

B. Analysis

Plaintiff brings eleven causes of action related to his employment with Redelicious. (*See* Compl. ¶¶ 88–130.) Defendants seek partial dismissal of Plaintiff's minimum wage violation claims under the FLSA and the NYLL, (*see* Defs' Mem. 3–6); Plaintiff's late payment of wages claims under the FLSA and the NYLL, (*see id*. at 6–10); and Plaintiff's whistleblower retaliation claim under the NYLL, (*see id*. at 11–12). The Court will address each argument in turn.

1. Minimum Wage Violations

Federal law mandates that employees be paid at least minimum wage for the first 40 hours worked in a given work week. 29 U.S.C. §§ 206(a), 207(a)(1). The Second Circuit has established that a plaintiff does not have a claim under the FLSA for hours worked below 40 in a given week (regardless of whether the plaintiff worked overtime or not), unless the average hourly wage rate paid to such plaintiff falls below the federal minimum wage rate. *See Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 115–16 (2d Cir. 2013); *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 494 (2d Cir. 1960). "Thus, to survive a motion to

dismiss 'a plaintiff alleging a federal minimum wage violation must provide sufficient factual context to raise a plausible inference there was at least one workweek in which he or she was underpaid.'" *Ayers v. Shiver*, No. 21-CV-473, 2022 WL 2161178, at *3 (E.D.N.Y. June 15, 2022) (quoting *Hirst v. Skywest, Inc.*, 910 F.3d 961, 966 (7th Cir. 2018)). Like the FLSA, the NYLL mandates that employees be paid at least minimum wage for the first 40 hours worked in a given work week. N.Y. Lab. Law § 652(1). Plaintiffs are also entitled to recover under the NYLL only if their average hourly pay rate in a given week was below the New York minimum wage rate. *See Huang v. GW of Flushing I, Inc.*, No. 17-CV-3181, 2019 WL 145528, at *5 (E.D.N.Y. Jan. 9, 2019).

Here, Plaintiff alleges federal and state minimum wage violations throughout his time working at Redelicious. (*See* Compl. ¶¶ 93–95, 110–12.) At the time relevant to the instant Action, the federal minimum wage was $7.25 per hour, and the New York State minimum wage was $11.80 in 2020 and $12.50 in 2021. *See* U.S. Dept. of Labor, Wage & Hour Division, *Questions and Answers About the Minimum Wage*, https://www.dol.gov/agencies/whd/minimum-wage/faq (last visited Aug. 7, 2023) (identifying federal minimum wage as $7.25 effective July 24, 2009); N.Y.S Division of the Budget, *2023 Minimum Wage Report*, at 1, https://dol.ny.gov/system/files/documents/2022/10/minimum-wage-2023.pdf (listing Upstate New York minimum wages from 2013–2023).[2] Generally, Plaintiff's pay throughout his time of employment was either exactly correlated with the New York minimum wage, or exceeded the state minimum wage. (*See* Compl. ¶¶ 37–39.) Defendants argue that the Complaint "does not plausibly allege that [Plaintiff's] effective wage

---

[2] "[I]t is clearly proper to take judicial notice" of information "retrieved from official government websites." *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (collecting cases).

rate ever fell below the $7.25 per hour" for his federal claim, nor does Plaintiff's Complaint "set forth necessary factual detail to support the inference of the additional working hours necessary for his effective hourly wage to drop below the minimum wage." (Defs' Mem. 4–6.) Plaintiff argues that he has adequately alleged one week of non-payment, which itself is sufficient to sustain a minimum wage claim, and otherwise has alleged "factual details concerning more systemic violations" throughout the rest of Plaintiff's employment. (Pl's Mem. 2–3.) The Court will analyze both arguments in turn.

As to the week of nonpayment, Plaintiff has sufficiently alleged minimum wage violations under the FLSA and NYLL. Plaintiff has alleged that he worked "two grocery store shifts and four delivery shifts" during his last week of work, and Defendants "failed to pay Plaintiff at all . . . totaling approximately $491 in unpaid wages[.]" (Compl. ¶ 49.) Plaintiff has "allege[d] facts about [his] salary and working hours, such that a simple arithmetical calculation can be used to determine the amount owed[.]" *Tackie v. Keff Enters. LLC*, No. 14-CV-2074, 2014 WL 4626229, at *3 (S.D.N.Y. Sept. 16, 2014). "A failure to pay *any* wages at all for work gives rise to a minimum wage claim." *Bueno v. Buzinover*, No. 22-CV-2216, 2022 WL 18859072, at *7 (S.D.N.Y. Nov. 28, 2022), *report and recommendation adopted in relevant part*, 2023 WL 2387113 (S.D.N.Y. Mar. 7, 2023). Thus, Plaintiff has sufficiently alleged a plausible claim under federal and state law for failure to pay minimum wage for his final week of work.

Plaintiff also alleges that Defendants committed "more systemic violations" throughout his employment to justify minimum wage violations beyond Plaintiff's final week of work. (Pl's Mem. 3.) Specifically, Plaintiff points to his allegations that Defendants automatically deducted one hour each Friday from his work time and did not compensate him. (*Id.*; *see also* Compl. ¶ 47.) Defendants argue that Plaintiff has not provided allegations of "earnings for specific

weeks and the actual hours worked," rendering his pleadings insufficient.  (Defs' Reply 2–3.)
The Court disagrees with Defendants that Plaintiff's allegations are vague or otherwise deficient
to assess the validity of the claim.  Indeed, Plaintiff's allegations are quite clear, stating that
"[o]n Fridays, Defendants prohibited Plaintiff from taking a lunch break" but automatically
deducted one hour from Plaintiff's time.  (Compl. ¶ 47.)  Plaintiff does not allege that this
occurred on "some Fridays" or another qualifier that may introduce the need for further
clarification, but instead firmly alleges that this practice occurred *on Fridays*, which the Court
could fairly read as "every Friday."  Accordingly, Plaintiff has sufficiently alleged at a minimum
that he worked an hour beyond which he was compensated every Friday.

However, this is not the end of the inquiry for a minimum wage claim, as "[a]n employee
cannot state a claim for a minimum wage violation 'unless [his] *average* hourly wage falls below
the federal [or state] minimum wage.'"  *Johnson v. Equinox Holdings, Inc.*, No. 13-CV-6313,
2014 WL 3058438, at *3 (S.D.N.Y. July 2, 2014) (emphasis added) (quoting *Lundy*, 711 F.3d at
115).  Here, Plaintiff alleges that, from February 2020, through December 2020, Plaintiff worked
approximately 7.5 to 8 hours every Friday, of which only 6.5 to 7 hours were paid after the lunch
hour deduction.  (Compl. ¶ 42.)  From February 2020 through September 2020, Plaintiff was
paid New York minimum wage at $11.80.  (*Id*. ¶ 37.)  Through simple arithmetic, if Plaintiff
indeed was paid one hour less than his 40 hours a week, at a pay rate that mirrored the New York
minimum wage, the average hourly wage each week would necessarily fall below New York
minimum wage.  By the same token, a single hour of underpayment at the New York minimum
wage does not violate the *federal* minimum wage, which is several dollars lower than New York
at $7.25.  Accordingly, Plaintiff has established a minimum wage claim under New York law for
February through September 2020, but fails to state a federal minimum wage claim.

However, the Court cannot conclude that Plaintiff has established a federal or state minimum wage violation for the rest of Plaintiff's employment with Defendants.  For example, from September 2020 through December 2020, Plaintiff was paid $12.50 per hour for his work as a stocker, almost a full dollar above the New York minimum at the time.  (*See* Compl. ¶ 38 (stating Plaintiff's pay as a stocker from Sept. 2020 through Dec. 2020).)  Assuming that Plaintiff worked 8 hours a day at $12.50 per hour, (*see id.* ¶ 42), Plaintiff would be entitled $100 a day for his work.  Under Plaintiff's allegations, Plaintiff received $87.50 on Fridays after the automatic deduction of his lunch hour.  Under this assumption, Plaintiff still received an average hourly wage of $12.18 during this workweek, which exceeded the New York minimum wage of $11.50 at the time.  Accordingly, Plaintiff has not "raise[d] a plausible inference" that he was underpaid from September 2020 through December 2020.  *See Ayers*, 2022 WL 2161178, at *3.

As to the period from January 2021 through April 2021, there are several reasons why Plaintiff has not sufficiently pled minimum wage violations under federal or state law.  First, Plaintiff alleges that he made well beyond the federal and state minimum wage during this period, as he was paid an additional $18 per hour as a delivery person for at least three to four hours per day.  (*See* Compl. ¶¶ 35, 39.)  Moreover, Plaintiff worked much longer hours during this period, up to 10 or 11 hours per day Sunday through Thursday.  (*Id.* ¶ 43.)  As such, Plaintiff's allegations regarding the missing payment "could be understood to allege that Defendant violated FLSA because there were some hours for which Plaintiff was not paid any compensation whatsoever, i.e., for the hours worked in excess of forty hours in a workweek."  *Alfonso v. Mougis Logistics Corp.*, No. 21-CV-5302, 2021 WL 5771769, at *4 (S.D.N.Y. Dec. 6, 2021) (quotation marks omitted).  "Under that understanding, even if Plaintiff's aggregate pay on a daily basis exceeded the minimum wage, Defendant would have violated FLSA [or NYLL] if

Plaintiff's pay was calculated on an hourly basis and he did not separately receive compensation for certain of those hours.  However, courts in [the Second] Circuit have uniformly rejected such arguments, holding that as long as a Plaintiff's average wage exceeds the federal minimum wage, it does not matter how that average is calculated."  *Id.* (collecting cases); *see also Cruz v. AAA Carting & Rubbish Removal, Inc.*, 116 F. Supp. 3d 232, 242 (S.D.N.Y. 2015) ("While Plaintiff may state a claim for a failure to pay *overtime* for the hours worked in excess of 40 hours a week, he does not necessarily state a claim for failure to pay *minimum wage* for those hours, because '[a]n employee cannot state a claim for a minimum wage violation 'unless [his] *average* hourly wage falls below the federal minimum wage.'" (emphasis in original)); *Huang*, 2019 WL 145528, at *5 (dismissing FLSA minimum wage claim where plaintiff's average hourly rate was $11.55/hour even though there were hours for which plaintiff received "only occasional (unspecified) cash compensation"); *Thind v. Healthfirst Mgmt. Servs.*, LLC, No. 14-CV-9539, 2015 WL 4554252, at *4–5 (S.D.N.Y. July 29, 2015) (holding that allegation that the plaintiff was not paid any compensation for hours worked in excess of forty a week may state claim for violation of FLSA overtime provisions but does not state claim for violation of FLSA minimum wage provisions where the plaintiff's average hourly salary calculated on a weekly basis was always in excess of the federal minimum wage).

Accordingly, Defendants' motion to dismiss the federal and state minimum wage violation claims is granted in part and denied in part.  Specifically, the Court denies Defendants' motion as to the federal and state claims for the week of nonpayment, as well as the NYLL claim for the period of February 2020 through September 2020.  The Court grants Defendants' motion as to all other periods for both the federal and state claims.

### 2.  Late Payment of Wages

Defendants also seek dismissal of both of Plaintiff's claims for late payment of wages under the FLSA and the NYLL.  (*See* Defs' Mem. 6–10.)

### a.  Late Payment under the FLSA

The FLSA requires that an employer "pay to each of his employees . . . who in any workweek is engaged in commerce or in the production of goods for commerce . . . not less than the minimum wage."  29 U.S.C. § 206(b); *see also Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 55 (2d Cir. 1998).  "The Act does not specify when this wage must be paid."  *Rogers*, 148 F.3d at 55 (emphasis omitted).  However, "[c]ourts have 'long interpreted [the FLSA] to include a prompt payment requirement.'"  *Coley v. Vannguard Urb. Improvement Ass'n, Inc.*, No. 12-CV-5565, 2016 WL 7217641, at *12 (E.D.N.Y. Dec. 13, 2016) (quoting *Rogers*, 148 F.3d at 55).  To determine whether the FLSA's "prompt payment requirement" has been violated, courts look to "objective standards."  *Rogers*, 148 F.3d at 57.  An employer's change to its pay schedule does not violate the prompt payment requirement where "the change: (a) is made for a legitimate business reason; (b) does not result in an unreasonable delay in payment; (c) is intended to be permanent; and (d) does not have the effect of evading the FLSA's substantive minimum wage or overtime requirements."  *Id.*; *see also Sarit v. Westside Tomato, Inc.*, No. 18-CV-11524, 2020 WL 1891983, at *4 (S.D.N.Y. Apr. 16, 2020) (adopting the same standard).

Here, Plaintiff's sole substantive allegation regarding the late payment of wages states that "Defendants typically paid Plaintiff on Fridays[,] [h]owever, when there were holidays, Defendants would delay payment of Plaintiff's wages until at least the following week." (Compl. ¶ 48; *see also id*. ¶ 118 (same).)  Even at this early stage in the litigation, Plaintiff's allegation is plainly insufficient to sustain a late payment claim under the FLSA.  For example, while Plaintiff has pled that there was a change in his pay schedule, Plaintiff provides no

allegations that this change was not for a legitimate business reason or had the effect of evading minimum wage requirements.  (*See generally id.*)  Without this information, Plaintiff has failed to sustain his burden at this stage.  *Cf. Rosenbaum v. Meir*, —F. Supp. 3d—, 2023 WL 2305960, at *5 (E.D.N.Y. Mar. 1, 2023) (denying a motion to dismiss where the complaint "sufficiently details how [the d]efendants missed payments on multiple occasions without any legitimate business reason and alleges these late or missed payments were unreasonable" (quotation marks omitted)); *Sarit*, 2020 WL 1891983, at *5–6 (denying a motion to dismiss a prompt payment claim where a plaintiff alleged a "change in . . . pay schedule—from a weekly payroll to a biweekly payroll—resulted in an unreasonable delay of payment, was not made for a legitimate business reason, and had the effect of evading the minimum wage requirements" and specifically alleging that "she was not paid in a timely manner[] and that [the d]efendants withheld her wages[] on at least one specific occasion" (quotation marks omitted)).

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's late payment of wages claim under the FLSA.

### b.  Late Payment under NYLL

Defendants also challenge Plaintiff's late payment of wages claim under the NYLL.  (*See* Defs' Mem. 7–10.)  Specifically, Defendants raise two arguments: (1) Plaintiff has no private right of action under NYLL Section 191(1-a) based on a recent New York Appellate division case, (*see id*. 7–9); and (2) Plaintiff has not otherwise sufficiently pled late payment, (*see id*. 9–10).

As to the availability of a private right of action, § 191(1) of the NYLL provides that "[e]very employer shall pay wages in accordance with the following provisions."  N.Y. L. Law § 191(1).  One of the provisions is entitled "Manual worker" and provides in pertinent part that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of

the week in which the wages are earned." § 191(1)(a)(i).  In *Vega v. CM and Associates Construction Management, LLC*, 107 N.Y.S.3d 286 (App. Div. 2019), the First Department held that an analogous statute, NYLL § 198(1-a), provides an express private right of action to enforce the weekly wage requirement because the term "underpayment" in the statute encompasses the late payment of wages.  *See id*. at 286.[3]  The court in *Vega* reasoned that the word "underpay" means "to pay less than what is normal or required" and that "[t]he moment that an employer fails to pay wages in compliance with [§] 191(1)(a), the employer pays less than what is required."  *Id*.  In addition, the court in *Vega* found that even if there were no express right of action, the NYLL also contains an implied right of action for manual workers to enforce their weekly pay requirement.  *Id*.

Defendants argue, as many have argued recently, that a recent New York Court of Appeals decision "provides reason to doubt the holding in *Vega*."  *Harris v. Old Navy, LLC*, No. 21-CV-9946, 2022 WL 16941712, at *10 (S.D.N.Y. Nov. 15, 2022), *report and recommendation adopted*, 2023 WL 2139688 (S.D.N.Y. Feb 20, 2023).  (*See also* Defs' Mem. 7–9.)  The New York Court of Appeals held in *Konkur v. Utica Academy of Science Charter School*, 185 N.E.3d

---

[3] Section 198(1-a) provides in relevant part:

In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due, except such liquidated damages may be up to three hundred percent of the total amount of the wages found to be due for a willful violation of section one hundred ninety-four of this article.

NYLL § 198(1-a).

483 (2022), that a private right of action was unavailable for NYLL § 198-b, which prohibits wage kickbacks.  *See id*. at 484.  After concluding that the statute did not provide for an express private right of action, *see id*. at 485, the Court considered whether "a legislative intent to create such a right of action is fairly implied in the statutory provisions and their legislative history," *id*.  Because the legislature had considered enforcement mechanisms and expressly provided for an "already comprehensive [enforcement] scheme," the Court declined "to find another enforcement mechanism."  *Id*. at 487 (citation and quotation marks omitted).

However, since *Konkur*, "[m]any federal courts have evaluated the fundamental question at issue [as to whether *Konkur* abrogated *Vega* for late payment claims]."  *Harris*, 2023 WL 2139688, at *1.  "Since *Vega*, every court in [the Second] Circuit to consider that decision appears to have followed its construction of the New York Labor Law."  *Harris*, 2022 WL 16941712, at *9 (quotation marks omitted) (quoting *Rodrigue v. Lowe's Home Centers, LLC*, No. 20-CV-1127, 2021 WL 3848268, at *5 (E.D.N.Y. Aug. 27, 2021)); *see also, e.g.*, *Rath v. Jo-Ann Stores, LLC*, No. 21-CV-791, 2022 WL 17324842, at *4 (W.D.N.Y. Nov. 29, 2022); *Levy v. Endeavor Air Inc.*, —F. Supp. 3d—, 2022 WL 16645829, at *5 (E.D.N.Y. Nov. 1, 2022); *Gillett v. Zara USA, Inc.*, No. 20-CV-3734, 2022 WL 3285275, at *11–12 (S.D.N.Y. Aug. 10, 2022); *Katz v. Equinox Holdings, Inc.*, No. 20-CV-9856, 2022 WL 1292262, at *5 (S.D.N.Y. Apr. 29, 2022); *Mabe v. Wal-Mart Assocs., Inc.*, No. 20-CV-591, 2022 WL 874311, at *8 (N.D.N.Y. Mar. 24, 2022); *Carrera v. DT Hosp. Grp.*, No. 19-CV-4235, 2021 WL 6298656, at *10 (S.D.N.Y. Nov. 1, 2021), *report and recommendation adopted*, 2021 WL 6298654 (S.D.N.Y. Dec. 7, 2021); *Sorto v. Diversified Maint. Sys., LLC*, No. 20-CV-1302, 2020 WL 7693108, at *2–3 (E.D.N.Y. Dec. 28, 2020); *Duverny v. Hercules Med. P.C.*, No. 18-CV-7652, 2020 WL 1033048, at *5 (S.D.N.Y. Mar. 3, 2020).  Accordingly, the Court joins the chorus of opinions throughout

the Second Circuit finding that Plaintiff has a private right of action for late payment of wages under the NYLL.

As to the sufficiency of Plaintiff's pleadings, the statutory language of the NYLL—unlike under the FLSA—specifically addresses the timing of payment of wages.  The NYLL provides that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned . . . ."  N.Y. Lab. Law § 191(1-a).  Under this standard, Plaintiff's NYLL claim also fails.  Plaintiff alleges that "when there were holidays, Defendants would delay payment of Plaintiff's wages until at least the following week." (Compl. ¶ 48.)  However, Plaintiff does not allege *when* the following week that he received his payment.  Indeed, the Court could assume that Plaintiff means "the following Friday," which may run afoul of NYLL's requirement to pay a manual worker "not later than seven calendar days after the end of the week in which the wages are earned."  N.Y. Lab. Law § 191(1)(a). However, there are numerous other, reasonable interpretations of Plaintiff's sole allegation.  For example, if a holiday was on a Friday, Defendants could have paid Plaintiff on any day, Monday through Thursday, which also falls in "the following week" under Plaintiff's own allegations. (Compl. ¶ 48.)   In this way, Plaintiff's allegation is not "enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and must be dismissed.

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's late payment of wages claim under the NYLL.

### 3.  Whistleblower Retaliation

Finally, Defendants challenge Plaintiff's whistleblower cause of action pursuant to NYLL § 740(2).  (*See* Defs' Mem. 11–12.)  In applicable part, NYLL §740(2) provides that "[a]n employer shall not take any retaliatory personnel action against an employee because such employee does any of the following: (a) discloses, or threatens to disclose to a supervisor or to a

public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety, or which constitutes health care fraud." N.Y. Lab. Law § 740(2)(a), *amended by* 2021 N.Y. Sess. Laws Ch. 522.[4] New York courts have held that claims under this provision must entail a "substantial and specific danger to the public health or safety," beyond mere violations of law. *See e.g.*, *Barker v. Peconic Landing at Southold, Inc.*, 885 F. Supp. 2d 564, 571 (E.D.N.Y. 2012) (holding that claims of drug use and theft by medical staff presented a public danger). The public danger component "has generally been narrowly construed to apply to the public at large." *Frank v. Walgreens Co.*, No. 09-CV-955, 2011 WL 4465210, at *5 (E.D.N.Y. Sept. 26, 2011) (quoting *Reyes v. Energy Transp. Corp.*, No. 96-CV-3321, 1997 WL 256923, at *4 (S.D.N.Y. May 16, 1997)). Thus, "[a]t the pleading stage, a plaintiff must (1) specify that an actual violation occurred, and (2) describe how the defendant's activities endangered the health and safety of the public." *Semeraro v. Woodner Co.*, No. 17-CV-8535,

---

[4] In January 2022, the applicable statute was amended to read as follows:

2. Prohibitions. An employer shall not take any retaliatory action against an employee, whether or not within the scope of the employee's job duties, because such employee does any of the following:

(a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety;

(b) provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any such activity, policy or practice by such employer; or

(c) objects to, or refuses to participate in any such activity, policy or practice.

N.Y. Lab. Law § 740(2). While the Court refers to the statute at the time of Plaintiff's employment, as discussed *infra*, the Court's analysis would not change under the current iteration of the law.

2018 WL 3222542, at *6 (S.D.N.Y. July 2, 2018); *see also Barker*, 885 F. Supp. 2d at 569–70

("To maintain an action under Section 740, an employee must plead and prove that the employer

engaged in an activity, policy, or practice that constituted an actual violation of law, rule, or

regulation." (quotation marks omitted)).

      Defendants broadly argue that the whistleblower statute is inapplicable to Plaintiff's

instant circumstances, as the statute "is intended to protect employees who disclose wrongful

actions of the employer which impact upon the public." (Defs' Mem. 11; *see also id*. at 12 ("The

behavior of [Redelicious], as alleged in the complaint, is a far cry from that which is the object of

Labor Law § 740.").) The Court agrees. "[I]n order to survive a motion to dismiss a plaintiff

must evince a certain quantum of dangerous activities that demonstrate adverse consequences

and thereby elevate the level of danger to public safety beyond mere speculation." *Semeraro*,

2018 WL 3222542, at *7 (quotation marks omitted) (quoting *Cotrone v. Consol. Edison Co. of

New York*, 856 N.Y.S.2d 48, 49 (App. Div. 2008)). Courts have held that allegations of assault

and battery by supervisors do not meet the requirements of Section 740. *See Romero v. Floris

Construction, Inc.*, No. 16-CV-4282, 2017 WL 5592681, at *7 (E.D.N.Y. Nov. 20, 2017);

*Sakthivel v. Industrious Staffing Co., LLC*, 183 N.Y.S.3d 1, 2 (App. Div. 2023) ("[The]

plaintiff's claim is based entirely on the alleged assault by her coworker, and this Court has held

that an assault by a coworker does not constitute an activity, policy, or practice of the employer

that is in violation of law, rule or regulation which violation creates and presents a substantial

and specific danger to the public health or safety." (quotation marks omitted)); *Diaz v. N.Y. State

Catholic Health Plan*, 18 N.Y.S.3d 866, 866–67 (App. Div. 2015) (concluding that alleged

assault and battery by a supervisor did not constitute a violation of law that presented the

relevant danger to public health or safety under § 740). Plaintiff's attempts to distinguish

controlling New York law to this respect are unavailing, (*see* Pl's Mem. 11); especially because the seminal New York case in this regard specifically stated that "[a]ssault and battery by a supervisor" does not constitute activity that presents a substantial and specific danger to public health or safety, *Diaz*, 18 N.Y.S.3d at 866.

At bottom, "this single alleged incident of battery by [Weiss] . . . does not rise to the level of 'substantial and specific danger to the public health or safety.'" *Romero*, 2017 WL 5592681, at *7 (citing *Tucker v. New York City*, No. 05-CV-2804, 2007 WL 3051870, at *3 (S.D.N.Y. Oct. 17, 2007) ("New York courts have consistently and strictly enforced this explicit limitation to the scope of [§] 740.")).  Accordingly, the Court grants Defendants' motion to dismiss the whistleblower retaliation claim.

### III.  Conclusion

For the foregoing reasons, Defendants' Motion is granted in part and denied in part. Specifically, Plaintiff's minimum wage claims under the FLSA and the NYLL for his final week of work, as well as his New York minimum wage claim for the period February through September 2020 survive.  The remaining minimum wage claims, Plaintiff's late payment of wages claims under the FLSA and the NYLL, and well as Plaintiff's NYLL whistleblower retaliation claims are dismissed.

Because this is the first adjudication of Plaintiff's claims on the merits, the Court will deem the instant dismissals as without prejudice.  To the extent Plaintiff has a good faith basis for filing an amended complaint to allege additional facts and otherwise address the deficiencies identified above, he must do so within 30 days of the date of this Opinion & Order.

The Court will hold a status conference on October 10, 2023, at 2:30 PM.  The Clerk of the Court is respectfully directed to terminate the pending motion.  (*See* Dkt. No. 15.)

SO ORDERED.

Dated:   September 28, 2023
         White Plains, New York

_____
         KENNETH M. KARAS
         United States District Judge

22